UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARRY B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02439-TAB-JRS |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Carry B. appeals the Social Security Administration's denial of her application for disability insurance benefits.  Plaintiff argues that the ALJ did not properly consider the recommendations and limitations suggested by Plaintiff's treating physician and nurse practitioner.  Plaintiff also takes issue with the ALJ's lack of limitations stemming from Plaintiff's headaches.  While Plaintiff's argument regarding limitations from her headaches ultimately falls short, she raises valid concerns about the ALJ's treatment of the medical source statements from her physician and nurse practitioner.  The ALJ's analysis does not provide enough detail or indication that the ALJ properly considered those opinions.  Accordingly, for reasons explained below, Plaintiff's request for remand [Filing No. 8] is granted.

**II.     Background**

On April 16, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on July 3, 2012.[1] The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled. Plaintiff's claim was appealed to the Appeals Council, which granted Plaintiff's request for review and remanded the claim for a second hearing. Following a hearing on December 2, 2020, the ALJ denied Plaintiff's claim again. Plaintiff requested review, but the Appeals Council denied the request. Subsequently, Plaintiff appealed to this Court.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. The ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from July 2012 through June 2013. However, there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, and the remaining findings in the ALJ's decision addressed the periods Plaintiff did not engage in substantial gainful activity. At step two, the ALJ determined that Plaintiff had the following severe impairments: kidney stones; restless leg syndrome; rheumatoid arthritis; headaches; lumbar and thoracic degenerative disc disease; carpal tunnel syndrome in the left upper extremity; obstructive sleep apnea; fibromyalgia; depression; and anxiety. [Filing No. 6-2, at ECF p. 20.]

---

[1] Plaintiff notes in her brief that she received an unfavorable decision in a previous Title II filing on January 19, 2016. Thus, Plaintiff argues that while this is not noted anywhere in the record, this would require an amended onset date of January 20, 2016. [Filing No. 8, at ECF p. 4.] This argument appears to be raised for the first time on appeal and not before the ALJ previously. Since the Court orders remand, the ALJ should ensure a proper onset date is used moving forward.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), but with the following limitations:

> [O]ccasional balancing, stooping, kneeling, crouching, and crawling. She has the ability, on a sustained basis, to understand, carry out, and remember simple instructions. She is able to make judgements [sic] commensurate with functions of simple repetitive tasks. She can respond appropriately to supervision and to coworkers in usual work situations. She can deal with changes in routine work settings. Frequent reaching, handling, fingering, and feeling with the left upper extremity.

[Filing No. 6-2, at ECF p. 22.] At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could have performed, including: sorter, packing/bagging, and inspector. [Filing No. 6-2, at ECF p. 27.] Accordingly, the ALJ concluded that Plaintiff was not disabled at any time from July 3, 2012, through December 31, 2018, the date last insured.

**III.   Discussion**

Plaintiff argues that the ALJ abused his discretion by failing to comply with 20 C.F.R. § 404.1520c in his consideration of the recommendations and limitations suggested by Plaintiff's treating physician and nurse practitioner. In addition, Plaintiff argues that the ALJ committed legal error by failing to consider and include limitations stemming from Plaintiff's headaches in the RFC findings. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __,

139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  In addition, the Court reviews the ALJ's decision "to determine whether it reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

> **A.    The ALJ's assessment of medical opinions consistent with regulations and supported by substantial evidence.**

Plaintiff contends that the ALJ failed to properly consider medical source opinions from Plaintiff's treating physician, Dr. Mary Beth Hensley, and nurse practitioner, Jennifer Jerson, under 20 C.F.R. § 404.1520c.  [Filing No. 8, at ECF p. 6.]  Dr. Hensley and NP Jerson both submitted medical source statements.  Plaintiff argues that these providers opined several functional limitations that would preclude employment, and that this was confirmed by vocational expert testimony indicating that limitations consistent with these statements regarding sedentary work limitations at less than a full-time hourly status, off-task considerations, and absences would preclude employment.  [Filing No. 8, at ECF p. 8.]  Plaintiff contends that the ALJ's analysis of these opinions is deficient because it: (1) fails to properly consider the supportability of the providers' opinions by reference to their own office records and their provided explanations for the recommended limitations; (2) fails to properly consider the consistency between the opinions of these two providers; and (3) relies too heavily on Dr. Singh's consultative examination findings.  [Filing No. 8, at ECF p. 10.]

4

Section 404.1520c(c) sets forth a list of factors that the ALJ must consider when evaluating the persuasiveness of a medical source opinion, including supportability, consistency, relationship with the claimant, specialization, and other factors. However, the regulations specifically state that supportability and consistency are the most important factors that the ALJ considers. 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. § 404.1520c(c)(1). Consistency relates to the relationship between the medical opinion and other evidence of record. 20 C.F.R. § 404.1520c(c)(2).

The ALJ discussed Dr. Hensley's medical source statement from December 2018, noting that he opined that Plaintiff "had some functional limitations, including more than four work absences per month, an off task rate of 100%, and sitting less than 2 hours in an 8-hour workday." [Filing No. 6-2, at ECF p. 25.] The ALJ found this opinion unpersuasive because it was generally inconsistent with, and unsupported by, the evidence discussed in the ALJ's decision, such as Plaintiff's activities of daily living and the findings from Dr. Singh's consultative exam, which included 5/5 strength in bilateral grip and upper and lower extremities, normal gait speed and sustainability without an assistive device, and intact sensation. [Filing No. 6-2, at ECF p. 25.]

Next, the ALJ analyzed Dr. Hensley's July 2018 opinion. The ALJ noted that Dr. Hensley[2] opined that Plaintiff had some functional limitations, including occasionally lifting 10

---

[2] Counsel for both Plaintiff and the Commissioner acknowledge that while the ALJ did not identify this opinion as belonging to Dr. Hensley, because the signature was illegible, contextual

5

pounds, occasionally stooping, balancing, and kneeling, and standing and/or walking less than 2 hours in an 8-hour workday. [Filing No. 6-2, at ECF p. 25.] The ALJ found this opinion somewhat persuasive because it was somewhat consistent with and supported by the evidence of record. The ALJ once again cited to Dr. Singh's consultative exam findings of 5/5 strength in bilateral grip and upper and lower extremities, normal gait speed and sustainability without an assistive device, and intact sensation as his reason for believing the evidence did not support limits greater than those the ALJ included in the RFC. [Filing No. 6-2, at ECF p. 25.]

Finally, the ALJ analyzed NP Jerson's opinion from November 2020. The ALJ noted that NP Jerson opined that Plaintiff had some functional limitations, including standing and/or walking less than 2 hours and sitting about 2 hours in an 8-hour workday, rarely lifting less than 10 pounds, elevating her legs at heart level or above for more than 75% of the workday, more than 4 work absences per month, and a 100% off task rate. [Filing No. 6-2, at ECF p. 26.] The ALJ found NP Jerson's opinion unpersuasive for inconsistencies and lack of support by evidence discussed in the ALJ's decision. The ALJ once more cited to Dr. Singh's consultative exam, including 5/5 strength, normal gait, and intact sensation, as well as Dr. Singh's finding of no edema. [Filing No. 6-2, at ECF p. 26.]

Plaintiff argues that the ALJ both failed to consider Dr. Hensley's and NP Jerson's own explanations to support their opinions and failed to consider their consistency between opinions. [Filing No. 8, at ECF p. 11.] The Commissioner does not directly address this portion of Plaintiff's argument. Other than a brief reference to the regulatory definition of supportability and consistency, the Commissioner simply highlights its belief that the ALJ's decision is

---

clues show that she was the source of that statement. [Filing No. 8, at ECF p. 9; Filing No. 11, at ECF p. 9.]

supported by substantial evidence and that this is a low bar that has to be met. [Filing No. 11, at ECF p. 8-9.]

However, even considering the substantive evidence standard, as Plaintiff articulates, the ALJ only cursorily stated that each of these opinions were generally inconsistent with and unsupported by the evidence discussed in the ALJ's decision. Even more concerning, the ALJ failed to include certain points of evidence, as well as the provider's own records and stated support from within their medical source statements. For instance, Dr. Hensley consistently referenced numerous positive complaints, often including dizziness, chills, fatigue, joint pain, anxiety, and depression. [*See, e.g.,* Filing No. 6-7, at ECF p. 345.] In addition, Dr. Hensley's records contain subjective reports from Plaintiff of chronic pain symptoms, joint tenderness, radicular pain symptoms, numbness, tingling, and spasms that are consistent with conditions such as fibromyalgia and restless leg syndrome. [*See* Filing No. 6-7, at ECF p. 444.]

The ALJ included fibromyalgia and restless leg syndrome at step two when noting Plaintiff's severe impairments. [Filing No. 6-2, at ECF p. 20.] The ALJ also noted Plaintiff's subjective complaints of pain and symptoms that affect many abilities, including Plaintiff's ability to lift, stand, walk, sit, and concentrate. [Filing No. 6-2, at ECF p. 23.] However, the ALJ found her statements not entirely consistent with the evidence in the record. The ALJ noted physical examinations and medical imaging "have generally been largely negative[,]" though there had been some positive findings at some appointments. The ALJ also noted some reported "exacerbations" of Plaintiff's severe impairments were she went to the ER for treatment, but the treatment was generally conservative, without admission to the hospital. [Filing No. 6-2, at ECF p. 23.] "The ALJ's analysis reveals that he misunderstood the nature of [Plaintiff's] fibromyalgia pain. The extent of fibromyalgia pain cannot be measured with objective tests aside from a

7

trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018). The ALJ largely relied on generally largely negative physical exams, Dr. Singh's 2014 consultative exam, and what the ALJ described as generally conservative treatment of Plaintiff's severe impairments. However, the ALJ made no mention of the reasoning included in Dr. Hensley and NP Jerson's reports explaining the basis for their stated opinions.

Dr. Hensley noted in her July 2018 opinion that she found Plaintiff's claims of severe back pain credible, despite appearing "mild radiographically." [Filing No. 6-7, at ECF p. 574.] She also referenced Plaintiff's "medically frail" status and that she was severely underweight at only 87 pounds to support her opinion regarding limitations for poor endurance and lifting restrictions. [Filing No. 6-7, at ECF p. 574.] Dr. Hensley provided similarly detailed explanations in her December 2018 opinion, once again noting the severity of Plaintiff's back pain despite mild radiographic findings and citing that pain and a poor response to stress support her opinions with respect to a need for frequent breaks, difficulty focusing and staying on task, and a need to elevate her legs when seated to alleviate pain. [Filing No. 6-8, at ECF p. 159.] The ALJ generally referenced Dr. Hensley's opinion that Plaintiff would need time off task but did not address specific points in Dr. Henley's opinion, including her statements related to Plaintiff's side effects from medications or the need for frequent absences. [Filing No. 6-8, at ECF p. 156.]

NP Jerson likewise included considerable detail to explain and support her recommended limitations for Plaintiff, noting side effects from medication, fatigue, and pain to support her opinion that Plaintiff would require frequent breaks during the day. [Filing No. 6-8, at ECF p. 464-45.] Plaintiff also cites to objective testing from March 18, 2019, that was consistent with small fiber neuropathy. [Filing No. 6-8, at ECF p. 267.] The ALJ wholly omits any reference to

8

this testing in her decision.  And the ALJ did not consider the consistency between the opinions of these two providers.

Moreover, the ALJ did not indicate whether he took into account the fact that these opinions were provided well after any other providers at the administrative levels reviewed the record and after the submission of considerable records never reviewed by the other providers. As previously noted, Dr. Hensley's opinions were provided in July and December 2018; NP Jerson's in November 2020.  Other reviewers providing medical source opinions were issued no later than 2017.  It is simply unclear whether the ALJ considered the fact that the opinions provided by Dr. Hensley and NP Jerson were consistent with each other, provided by treating sources, and provided by sources that had the benefit of reviewing a considerably more-developed record than other reviewers.

As noted above, the ALJ also found Dr. Hensley's and NP Jerson's opinions to be only somewhat or unpersuasive because of inconsistency with evidence in the decision and supported this finding with citation to the findings from Dr. Singh's 2014 consultative exam and Plaintiff's activities of daily living.  The ALJ plainly relied heavily on Dr. Singh's 2014 exam.  It is referenced at least seven times in the ALJ's decision, and is the main reasoning cited for finding the opinions of Dr. Hensley and NP Jerson unpersuasive or only somewhat persuasive.  Plaintiff takes issue with the reliance on Dr. Singh's exam, noting that it took place over three years prior to Plaintiff filing the Title II claim at issue, over four years prior to either of Dr. Hensley's medical source statements, and over six years prior to NP Jerson's statement.  Plaintiff's argument that the ALJ should not discount more recent opinions solely based on an outdated exam from 2014 has merit.  While review of the ALJ's decision in its entirety indicates that the ALJ did not base his decision *solely* on Dr. Singh's 2014 examination, it does indicate a large

9

emphasis placed on that examination and little explanation or reasoning for discounting more recent reports.

Of course, the Court cannot re-weigh the evidence in its review of the ALJ's decision to determine if substantive evidence supports it. *See, e.g., Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014) ("To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses."). But the Court cannot adequately review an ALJ's decision if it appears from the decision that the ALJ did not properly consider the evidence in the record. *See, e.g., Kelli M. v. Saul*, No. 1:20-cv-1731-DLP-JRS, 2021 WL 4236802, at *3 (S.D. Ind. Sept. 17, 2021) ("Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."). The ALJ performed a cursory analysis on the most recent medical statements from Dr. Hensley and NP Jerson, without addressing the specific reasoning provided in those statements for the opined limitations. Moreover, the ALJ relied so heavily on one specific—and arguably, outdated—examination, that the decision lacks adequate discussion of the evidence for the Court to review on appeal. Thus, the ALJ must address these shortcomings on remand.[3]

---

[3] Plaintiff's brief contains no citations to case law beyond a brief, largely generic standard of review section. [Filing No. 8, at ECF p. 3-4.] The argument section contains no case citations at all, only internal record cites and reference to the SSA regulations defining the factors an ALJ must consider. In addition, Plaintiff failed to file a reply brief. While this weakened Plaintiff's arguments, the fact remains that the ALJ's decision does not indicate whether he gave proper consideration and analysis to these medical source opinions.

## B. The ALJ properly considered Plaintiff's headaches in assessing RFC.

Plaintiff also argues that the ALJ failed to account for the functional impact of her migraine headaches in establishing Plaintiff's RFC. [Filing No. 8, at ECF p. 15.] Plaintiff testified at the hearing that she experiences severe headaches on a daily basis that often require her to sit in a dark closet for any measure of relief. [Filing No. 6-2, at ECF p. 46-47.] At step two, the ALJ found that Plaintiff had multiple severe impairments, including headaches. [Filing No. 6-2, at ECF p. 20.] Plaintiff argues that remand is appropriate because the RFC fails to include any limitations—such as an allowance for time off task or absences—that would account for Plaintiff's headaches as a severe impairment. [Filing No. 8, at ECF p. 16.] This argument does not fare as well as her first. The evidence Plaintiff offers in support of this statement is her testimony regarding the timing and duration of the headaches, which the ALJ considered.

The regulations require an ALJ to consider the functional impacts of both severe and non-severe impairments when arriving at the RFC finding. *See, e.g., Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."). The ALJ did just that. The ALJ noted that while there is no specific listing for headaches, he considered their effects and the listings under 11.00, including listing 11.02, relating to neurological disorders when evaluating Plaintiff's impairments under the listings. [Filing No. 6-2, at ECF p. 21.] The ALJ referenced Plaintiff's testimony regarding several headaches per week. [Filing No. 6-2, at ECF p. 23.] However, the ALJ also noted that Plaintiff reported that Excedrin migraine helped her headaches at a medical appointment in January 2019, and the severity was noted to be mild at that appointment. [Filing No. 6-2, at ECF p. 24 (citing Filing No. 6-8, at ECF p. 6).] Thus, Plaintiff's own statements to

her doctor suggested that she was not limited to any significant degree by migraine headaches at that time.

To the extent that the ALJ's decision did not discuss all available evidence related to Plaintiff's headaches, "it need not." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) (*citing Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) ("The ALJ is not required to address every piece of evidence or testimony presented, but most provide a 'logical bridge' between the evidence and his conclusion.")).  The ALJ followed the regulations when considering Plaintiff's headaches and related symptoms and in assessing her RFC.  Plaintiff improperly conflates a symptom and the diagnosis of an impairment with functional limitations.  Plaintiff's contention that the ALJ should have interpreted Plaintiff's subjective symptom complaints regarding her headaches differently effectively asks the Court to review evidence the ALJ considered and come to a different conclusion.  That is not the Court's role.  *See, e.g., Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) ("Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ.").  The ALJ supported his conclusion that Plaintiff's headaches still allowed Plaintiff to consistently perform a range of light exertional work.  Plaintiff has not shown otherwise.  Thus, this is not a basis for remand.

### IV. Conclusion

Because the ALJ did not support his findings regarding the medical source statements of Dr. Hensley and NP Jerson with substantial evidence or provide enough explanation for the Court to determine if proper analysis was conducted, Plaintiff's request for remand is granted. [Filing No. 8.]

Date: 8/10/2022

*[signature]*

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email